# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

ALLEN CARTER SHIRLEY
DIANE WINN SHIRLEY

       Debtors

Case No.  09-35259

BANKEAST, in its capacity as authorized
Representative of the Estate of Allen Carter
Shirley and Diane Winn Shirley

       Plaintiff

    v.

RUTH W. SHIRLEY

       Defendant

Adv. Proc. No. 10-3032

## MEMORANDUM ON
## DEFENDANT'S MOTION FOR NEW TRIAL

**APPEARANCES:**    THE RITCHIE LAW FIRM, P.C.
        Wilson S. Ritchie, Esq.
        Rachel K. Powell, Esq.
        607 Market Street
        Suite 1100
        Knoxville, Tennessee  37902
        Attorneys for Plaintiff

        MORTON & MORTON, PLLC
        J. Myers Morton, Esq.
        1518 North Broadway
        Knoxville, Tennessee  37917
        Attorneys for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Motion by Defendant for New Trial (Motion for New Trial) filed by the Defendant on September 22, 2011, asking the court, pursuant to Rule 59 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure, for a new trial or to alter or amend the Judgment and corresponding Memorandum filed on September 12, 2011. On September 29, 2011, the Plaintiff filed the Plaintiff's Response in Opposition to Motion by Defendant for New Trial.

The trial of this adversary proceeding was held on August 1 and 2, 2011. On September 12, 2011, the court entered a Judgment avoiding the March 27, 2009 transfer from the Debtors to the Defendant of their one-half undivided interest in the real property located in Sevier County, Tennessee, referred to as Caney Creek Tract 1, pursuant to 11 U.S.C. § 548(a)(1)(A) and (B) and 11 U.S.C. § 544(b)(1) in conjunction with Tennessee Code Annotated § 66-3-305(a)(1) and (2). The Judgment also directed that the Plaintiff recover the avoided transfer for the benefit of the Chapter 11 bankruptcy estate pursuant to 11 U.S.C. § 550(a)(1) (2006) and that the Defendant transfer her interest in Caney Creek Tract 1 back to the Debtors after which time it would be liquidated in accordance with the terms of the Third Amended Plan of Reorganization by BankEast confirmed on October 22, 2010, as modified on January 6, 2011 (Confirmed Plan). The Judgment was accompanied by a Memorandum setting forth the court's findings of fact and conclusions of law.[1] The Defendant timely filed the Motion for New Trial on September 22, 2011, averring that the court erred by not allowing into evidence the deposition testimony of a BankEast representative, asserting

---

[1] Pursuant to the Amended Pretrial Order entered on October 26, 2010, the trial was consolidated with Adv. Proc. No. 10-3031, and the Memorandum Opinion filed on September 12, 2011, contains the findings of fact and conclusions of law related to both adversary proceedings.

that she is entitled to a lien on Caney Creek Tract 1 by virtue of 11 U.S.C. § 550(e) (2006), and that she is entitled to partition in kind rather than liquidation of the Caney Creek Tract 2 property.

The facts of the case are set forth in detail in the court's Memorandum Opinion and will not be restated in detail here. In summary, on March 27, 2009, one day prior to the March 28, 2009 maturity date of a promissory note with a balance of $4,508,657.55 owed by them to the Plaintiff, the Debtors executed a General Warranty Deed transferring to the Defendant a one-half undivided interest in real property located at 746 Caney Creek Road, Sevierville, Tennessee, designated as Caney Creek Tract 1. Also on March 27, 2009, the Debtors created The Allen C. Shirley and Diane W. Shirley Revocable Living Trust, designating themselves as trustees, and transferred to the trust by Quit Claim Deed their remaining one-half undivided interest in Caney Creek Tract 1 along with their one-half undivided interest in real property designated as Caney Creek Tract 2, located at 710 Caney Creek Road, Sevierville, Tennessee.

The Debtors subsequently filed the Voluntary Petition commencing their Chapter 11 case on September 22, 2010, and, as authorized by the Order entered in the Debtors' case on March 25, 2010, granting BankEast derivative standing to pursue this avoidance action, the Plaintiff filed this adversary proceeding on April 5, 2010. In its Memorandum Opinion filed on September 12, 2011, the court found that the presumption created by the presence of several badges of fraud – including but not limited to inadequate consideration, the close relationship between the Debtors and the Defendant, the Debtors' continued relationship with the property after it was transferred, the timing of the transfer in light of the maturity date of their promissory note to the Plaintiff, and the Debtors' insolvency at the time of or shortly after the transfer – was not rebutted and that the transfer to the

3

Defendant was avoidable due to actual and constructive fraud under the Bankruptcy Code as well as actual and constructive fraud under Tennessee law.

In the Motion for New Trial, the Defendant avers that she should have been allowed to read into evidence the deposition testimony of the Plaintiff's Rule 30(b)(6) representative which she contends was admissible as an admission against interest by the Plaintiff and relevant with respect to the Debtors' solvency. The Defendant also argues that she is a good faith transferee and entitled to a lien to the extent she loaned funds to improve, preserve, and increase the value of the property. Finally, the Defendant asks the court to partition Caney Creek Tract 2, in which she is the owner of a one-half undivided interest, rather than sell it under the Confirmed Plan. As the basis for her Motion for New Trial, the Defendant cites to Rule 59 of the Federal Rules of Civil Procedure, which is applicable to adversary proceedings through Rule 9023 of the Federal Rules of Bankruptcy Procedure, and provides in material part:

> (a) **In General.**
>
> > (1) *Grounds for New Trial*. The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
> >
> > . . . .
> >
> > (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.
> >
> > (2) *Further Action After a Nonjury Trial*. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

FED. R. CIV. P. 59. A motion under Rule 59 is not, however, "intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories[,]" and

4

"[t]he burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration." *In re Nosker*, 267 B.R. 555, 564-65 (Bankr. S.D. Ohio 2001) (citations omitted); *see also Condor One, Inc. v. Homestead Partners, Ltd. (In re Homestead Partners, Ltd.)*, 201 B.R. 1014, 1018 (Bankr. N.D. Ga. 1996) (stating that a Rule 59 motion may not be "viewed as a means for overcoming one's failure to litigate matters fully."). "[I]n non-jury cases, new trials are typically ordered under Rule 59(a) only when there has been a manifest error of law or a mistake of fact." *Olson v. Anderson (In re Anderson)*, 357 B.R. 473, 475 (Bankr. W.D. Mich. 2006) (quoting *Crehan v. Ly (In re Ying Ly)*, 350 B.R. 757, 759-60 (Bankr. W.D. Mich. 2006) (internal citations omitted)). After reviewing the Motion for New Trial, the court finds that none of the arguments advanced by the Defendant in the Motion for New Trial meet the strict standard for granting a new trial under Rule 59(a)(2).

**A**

First, the Defendant's argument that she should have been allowed to read into evidence excerpts from Trial Exhibit 46, the deposition of Tamara Boyer, the Plaintiff's Rule 30(b)(6) representative, and have the deposition testimony considered in conjunction with Trial Exhibits 58, 59, 61, and 62 which reflected, *inter alia*, appraisal valuations of the Debtors' real property on the basis that the evidence was relevant and an admission against interest is without merit. During the Defendant's proof, her attorney began reading portions of Ms. Boyer's deposition; however, he was unprepared with the precise pages, and the court ruled that the Defendant could file designated

excerpts, subject to consideration upon whether the court deemed the testimony relevant.[2] Following further exchange with the Defendant's attorney and an objection by the Plaintiff to the proffered exhibits, the court determined that the Plaintiff's internal records concerning its satisfaction with the Debtors' real estate as collateral for the underlying loan to the Debtors were irrelevant in this adversary proceeding where the Plaintiff was standing in the shoes of a trustee seeking to avoid a fraudulent transfer and was not acting in its individual capacity as a secured creditor.

As an initial matter, although directed by the Pretrial Order entered on July 20, 2010, and the Amended Pretrial Order entered on October 26, 2010, to do so at least fourteen days prior to trial, the Defendant did not file a witness list, and the Plaintiff was not on notice prior to trial that the Defendant intended to use Ms. Boyer's deposition testimony.  The Plaintiff did not, therefore, nor was it required to, have Ms. Boyer present at the trial for the purpose of examination by Defendant's counsel or for the purpose of allowing her to clarify or explain any deposition testimony that might have been read into the record by the Defendant's counsel. Specifically, the Amended Pretrial Order directed the following with respect to witness lists:

> Final witness lists have been filed.  Any amended Final Witness Lists shall be filed and exchanged at least fourteen (14) days prior to trial.

AMD. PRETRIAL ORDER at ¶ 8.  This language memorialized in writing the court's directions to counsel at the pretrial conference held on June 17, 2010, at which the trial was originally scheduled for October 20, 2010, but then continued eventually until August 1, 2011.  Pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by

---

[2] Although designated on the Amended Consolidated Joint Index of Exhibits, a copy of the deposition was not tendered to the court with the pre-marked and pre-filed exhibits.

Rule 7037 of the Federal Rules of Bankruptcy Procedure, "[i]f a party fails to . . . identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In this case, not only had the Defendant not filed a witness list as directed by the July 20, 2010 Pretrial Order, but she failed to file an amended final witness list during the more than eight months between entry of the Amended Pretrial Order on October 20, 2010, and the July 18, 2011 deadline. At trial, the Defendant's counsel stated that she only intended to call one witness other than the Defendant – Ms. Boyer through her deposition testimony. There is no justification for the Defendant's failure to file a witness list disclosing that fact, and it was well within the court's discretion to disallow the deposition testimony for that fact alone.

Nevertheless, the court sustained the Plaintiff's objection to Ms. Boyer's deposition testimony on the basis of relevancy, stressing that the Plaintiff was acting in the place of a trustee rather than as a secured creditor, and it was irrelevant whether the Plaintiff had internal documents in which it had deemed the Debtors worthy of loaning money. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. In her Motion for New Trial and supporting brief, the Defendant argues that the disallowed exhibits were "[e]vidence that BankEast considered [the D]ebtors solvent in close proximity to [their] bankruptcy filing" and relevant as "an admission against interest by BankEast[.]" However, as explained by the court during its ruling on the Plaintiff's objection, what the Plaintiff believed – in its capacity as a creditor – is, for the purposes

7

of this fraudulent conveyance action, irrelevant. The real party in interest in this adversary proceeding is the Debtors' bankruptcy estate and not the Plaintiff, who was granted derivative standing to file the lawsuit. *See e.g., Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (stating that a stockholder with derivative standing is "at best the nominal plaintiff" while the corporation named as a defendant was "the real party in interest"); *Spearman v. Stoddard*, 2011 WL 4005381, at *7 n.10 (W.D. Mich. Mar. 30, 2011) ("In a derivative action, the party for whose benefit the action is brought is the real party in interest and is an indispensable party."). And while the court agrees with the Defendant that the Debtors' solvency was at issue in this adversary proceeding, it disagrees that the Plaintiff's opinion as to the Debtors' creditworthiness was at issue. A creditor deeming the Debtors solvent for the purposes of making a loan does not equate to solvency under the Bankruptcy Code and/or the Tennessee Fraudulent Transfer statutes. The court carefully analyzed the Debtors' financial condition under those statutes and arrived at the conclusion that the Debtors were insolvent at the time of the transfer to the Defendant or were rendered insolvent by the transfer. *See* MEM. OP. at 10-13, 22. Nothing that the Defendant might have presented with respect to the Plaintiff's opinion whether the Debtors were a good risk could have changed that analysis or the final result and was, therefore, irrelevant.

**B**

Next, the Defendant argues that she was a good faith transferee and, pursuant to 11 U.S.C. § 550(e), is entitled to a lien on Caney Creek Tract 1 for the value of improvements she made thereto. This subsection provides the following:

> (1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of –
>
>> (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
>>
>> (B) any increase in the value of such property as a result of such improvement, of the property transferred.
>
> (2) In this subsection, "improvement" includes –
>
>> (A) physical additions or changes to the property transferred;
>>
>> (B) repairs to such property;
>>
>> (C) payment of any tax on such property;
>>
>> (D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and
>>
>> (E) preservation of such property.

11 U.S.C. § 550(e). The Defendant, as the transferee seeking a lien, bears the burden of establishing that she was a good faith transferee. *Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*, 444 B.R. 767, 813 (Bankr. W.D. Mich. 2011). "'Good faith' is not defined by the Code and is a determination made on a case-by-case basis." *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 810 (Bankr. S.D. Ohio 2009). Courts in the Sixth Circuit are split on whether, in determining whether a transferee acted in good faith, to employ an objective or subjective standard. Under the objective standard,

> [T]he courts look to whether the transferee objectively 'knew or should have known' instead of examining the transferee's actual knowledge from a subjective standpoint. In other words, a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.

9

*Grove-Merritt*, 406 B.R. at 810 (quoting *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355 (8th Cir. 1995) (internal citations omitted)). The subjective standard is based upon a transferee's "awareness of" the badges of fraud established with respect to the transferor and the transferee's "honesty with respect to the fraud being perpetrated [which] encompasses more than just complicity for the transferee's mere awareness of the debtor's fraudulent intent [and] would also cause his taking to be in bad faith." *Teleservices Grp., Inc.*, 444 B.R. at 773-74.

Under the facts of this case, it is not necessary for the court to adopt the objective or the subjective standard, as it can be determined that, under either standard, the Defendant was a good faith transferee. The court found the presence of several badges of fraud with respect to the Debtors' actual fraud: (1) the Defendant is an insider of the Debtors; (2) the Debtors retained control of the property following the transfer to the Defendant; (3) the timing of the transfer to the Defendant on March 27, 2009, in correlation to the March 28, 2009 maturity date of the promissory note to the Plaintiff; (4) a lack of consideration and/or value from the Defendant to the Debtors in exchange for the transfer; and (5) the Debtors' insolvency at the time of or shortly after the transfer. *See* MEM. OP. at 9-10. Nevertheless, at trial, the Defendant testified that she was not aware that the Debtors were transferring an undivided one-half interest in Caney Creek Tract 1 to her until after the transfer had taken place, that the Warranty Deed effectuating the transfer to her had already been recorded when she first saw it, that she was not aware of the Debtors' financial condition, and that she considered the transfer as "payment" of the $50,000.00 balance owed by the Debtor, Allen Shirley, to her on an earlier loan evidenced by Trial Exhibit 48. Although the court avoided the transfer due to actual fraud of the Debtors and found that there was inadequate consideration for the transfer,

10

there is nothing in the record to rebut the Defendant's testimony as to what she knew, nor is there anything in the record to indicate that she should have known the transfer was fraudulent at the time it was made in light of the fact that her undisputed testimony indicates that she was not even aware of it until after it had taken place.

Nevertheless, although the court agrees that the Defendant was a good faith transferee, the record does not adequately reflect any specific values for improvements to Caney Creek Tract 1 for which a lien could be imposed. At trial, the Defendant testified that she spent a great deal of time and effort making improvements, including planting trees, creating and selling a cookbook, and working at the farmer's market on the property; however, she did not provide any proof as to the actual value of these contributions. The only amount to which the Defendant testified that has any sort of testamentary or documentary proof was Trial Exhibit 120 which is a document dated February 24, 2010, handwritten by the Defendant, stating the following:

> To Whom It May Concern,
>
> This note between Allen C. Shirley (Son) and Ruth W. Shirley (Mother) is to make known to all concerned of the transaction between both parties.
>
> In the winter of 2009-2010 Ruth W. Shirley loaned to Mountain Mist Farms $30,000.00 (Thirty Thousand and No/100 Dollars[)] for the purpose of farm improvements, equipment, and plants. This money is to be construed as a loan and should be paid back, interest free, in a timely manner and as soon as possible.
>
> If the amount is not paid back in its entirety or in a timely manner it should be understood that an additional part of the farm will belong to her. An amount considered fair by all concerned as to the unpaid portion.

TRIAL EX. 120. Although this document states that the Defendant loaned a total of $30,000.00 for "improvements, equipment, and plants," it also states that the money was loaned to "Mountain Mist

Farms," the name assigned by the Debtors to the business they operate on Caney Creek Tracts 1, 2, and 3.  Furthermore, Trial Exhibit 120 does not specify the amounts spent on each category, and when questioned at trial about what the $30,000.00 went towards, the Defendant testified that she "thought" it was for the Berry Barn but she could not be sure.  Thus, it cannot be discerned from this document how much of that $30,000.00 might be attributable to actual "improvements" to Caney Creek Tract 1 as defined by § 550(e)(2) which only includes physical additions or changes and/or repairs to the property and does not include equipment costs.

### C

Finally, the Defendant requests that the court make additional findings that Caney Creek Tract 2, in which she holds an undivided one-half interest not affected by this adversary proceeding, should be partitioned or sold from Caney Creek Tract 1, with the Defendant's interest segregated. Assuming their compliance with the Judgment entered in Adversary Proceeding No. 10-3031, the Debtors and the Defendant are, once again, co-owners of Caney Creek Tract 2. However, disposition of the Debtors' interest in Caney Creek Tract 2 is controlled by the Confirmed Plan which provides at Section E of Article III for the liquidation of various parcels of real property owned by the Debtors, including, upon the successful prosecution of this adversary proceeding and Adversary Proceeding No. 10-3031, the Debtors' interest in Caney Creek Tracts 1 and 2 by public auction. Pursuant to 11 U.S.C. § 1141(a) (2006), "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . ." The court cannot, within the confines of this adversary proceeding, deviate from the obligations imposed upon the Debtors and their creditors under the terms of the Confirmed Plan. More importantly, the action before the court arises under §§ 544(b)(1) and 548(a)(1) of the

Bankruptcy Code.  The Defendant relies on 11 U.S.C. § 363(h) (2006) to support her argument that the court should direct the partition in kind or separate sale of Caney Creek Tract 2.  Section 363(h) has no application to this adversary proceeding.

For the foregoing reasons, the Defendant is not entitled to relief under Rule 9023 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 59 of the Federal Rules of Civil Procedure, and her Motion for New Trial will be denied.  An Order consistent with this Memorandum will be entered.

FILED:  October 19, 2011

                                                 BY THE COURT

                                                 */s/  RICHARD STAIR, JR.*

                                                 RICHARD STAIR, JR.
                                               UNITED STATES BANKRUPTCY JUDGE